```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  CHRISTOPHER DRAGHI,

                    Plaintiff,             MEMORANDUM & ORDER
                                           24-cv-2920 (EK)(MMH)
          -against-

  NEW YORK CITY DEPARTMENT OF
  EDUCATION,

                    Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

      Christopher Draghi brings this action against the New York City Department of Education pursuant to the Americans with Disabilities Act. He asserts claims for discrimination, refusal to provide a reasonable accommodation, hostile work environment, and retaliation. He also brings analogous claims under state and city law.

      The Department now moves to dismiss the federal claims.[1] For the reasons set out below, that motion is granted. The Court declines supplemental jurisdiction over the non-federal claims.

---

[1] The Department is a suable entity because "the City of New York and the Department of Education are separate legal entities." *Brainbuilders LLC v. EmblemHealth, Inc.*, No. 21-CV-4627, 2022 WL 3156179, at *13 (S.D.N.Y. Aug. 8, 2022) (collecting cases); *see also* N.Y. Educ. Law § 2551 ("The board of education of each city school district of a city with one hundred twenty-five thousand inhabitants or more according to the latest federal census is hereby continued as a body corporate.").

##   I.   Background

The following facts are drawn from the amended complaint, and they are presumed true for the purposes of this motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).[2]

Christopher Draghi worked as a paraprofessional with special-needs students at a public school in Brooklyn. Draghi suffers from anxiety. Compl. ¶ 7, ECF No. 6. This anxiety "impacts his ability to sleep and concentrate," and can cause "physical manifestations" such as "extreme tightness in his chest." *Id.* ¶¶ 7, 13. Draghi alleges that on June 13, 2019, a teacher called him "stupid" in a classroom full of students, triggering an anxiety attack. *Id.* ¶¶ 12-13. In response, he asked the assistant principal — Paul Parella — to be moved to a different classroom or, alternatively, for a leave of absence. Parella declined, stating that there were "only two weeks left in the school year." *Id.* ¶¶ 18-21. Draghi took the next day off from work. *Id.* ¶ 22.

Around five days later, Parella assigned Draghi to work in a different classroom. *Id.* ¶¶ 24-26. He also issued Draghi a "disciplinary notice" for "excessive absenteeism." *Id.* ¶ 23. At an ensuing disciplinary conference, Parella "berated

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

Draghi over his . . . request[s] for a change in schedule or a leave of absence." *Id.* ¶ 26. Parella further stated that June 13 (the day of the anxiety incident) was the "day . . . the wheels came off the wagon" and was "the only reason" they were having the disciplinary conference. *Id.* ¶ 26. Parella later wrote Draghi a disciplinary letter, citing his "attendance" and "professionalism" issues. *Id.* ¶ 29.

Tensions continued into the next academic year. In October 2019, Parella sent Draghi another disciplinary letter, claiming he was not abiding Parella's instructions about how to help certain special needs students. *Id.* ¶ 34. Draghi alleges that Parella had never given him these instructions. *Id.* ¶¶ 32, 34. During a disciplinary conference related to that letter, Parella stated the view that Draghi was "having some type of anxiety breakdown." *Id.* ¶ 33.

Several months later, in May 2020, Draghi filed his first complaint with New York State Division of Human Rights ("SDHR"), claiming disability discrimination and retaliation. *Id.* ¶ 35; *see also* Pl.'s First SDHR Compl., ECF No. 12-3.[3] He claims that this filing prompted a further "campaign of false

---

[3] Draghi does not append this SDHR complaint to his pleading. However, the Court may (and does) judicially notice it, as well as a second SDHR complaint that is discussed below. *See Quarles v. N.Y.C. Health & Hosps.*, No. 22-CV-4553, 2023 WL 3880015, at *3 (S.D.N.Y. June 8, 2023) (collecting similar cases), *report and recommendation adopted*, 2023 WL 5321034 (S.D.N.Y. Aug. 18, 2023).

3

and baseless discipline." *Id.* ¶ 37. Draghi points to a series of events that occurred almost two years later, including: (1) a week-long suspension without pay in February 2022 for failing to complete paperwork; (2) a disciplinary letter in March 2022 for failing to supervise students; (3) another disciplinary letter in March 2022 for miscellaneous infractions, such as writing "inappropriate" notes on his students' behavioral forms; and (4) the assignment in April 2022 of two new students to him without updated documentation about their educational needs, which "set[] [him] up to fail." *Id.* ¶¶ 38-51.

Multiple suspensions followed. The school suspended him in May 2022, allegedly on unstated grounds. *Id.* ¶ 52. It then informed him that he was being investigated for sexual misconduct with a student. *Id.* ¶ 55. He was suspended again in August 2022, again allegedly without explanation. *Id.* ¶ 56.

Draghi filed his second complaint with the SDHR in January 2023. *See generally* Pl.'s Second SDHR Compl., ECF No. 12-5. Eight months later, the school fired him for "engag[ing] in inappropriate conduct with students." Compl. ¶ 57. The complaint reports that certain unnamed

supervisors had accused Draghi of, among other things, "look[ing] into the girls' bathroom." *Id.*

This suit, and the defendant's motion to dismiss, followed.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). At the same time, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

## III. Discussion

### A. Timeliness

Before addressing the merits of Draghi's ADA claims, we consider the matter of timeliness. An ADA claim accrues "when [the plaintiff] knew or had to reason to know of the injury serving as the basis for his claim." *Harris v. City of*

5

*New York*, 186 F.3d 243, 247 (2d Cir. 1999). At that point, a New York plaintiff has "300 days to file his ADA complaint" with the EEOC or its state counterpart. *Id.* at 247 & n.2.

1. Most of the Challenged Conduct Is Time-Barred

Most of the conduct Draghi challenges falls outside the 300-day window. Draghi filed his first SDHR complaint on May 27, 2020. ECF No. 12-3. So, any conduct that occurred before August 1, 2019 is not independently actionable. *Harris*, 186 F.3d at 247. This includes the June 13 incident (during which a teacher called Draghi "stupid") and the ensuing disciplinary action and request for accommodation. Draghi filed his second SDHR complaint — which recounted allegations of further discrimination from December 2021 onward — on January 26, 2023. *See* ECF No. 12-5. So, any conduct that occurred before April 1, 2022 (and that does not fall within the 300-day window covered by Draghi's first complaint) is likewise inactionable. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

2. The Continuing-Violation Doctrine Does Not Apply

The parties agree that much of the challenged conduct falls outside the required windows. *See* Def.'s Mem. in Supp. of Dismissal 5-6, ECF No. 12-1; Pl.'s Mem. in Opp'n to Dismissal 3, ECF No. 15. They disagree, however, about whether such conduct

6

remains independently actionable under the continuing violation doctrine.  *See* Pl.'s Mem. in Opp'n to Dismissal 4-5; Def.'s Reply in Supp. of Dismissal 2-4, ECF No. 17.

The continuing violation doctrine has been described as "heavily disfavored in the Second Circuit." *Trinidad v. N.Y.C. Dep't of Correction*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006); *see also Curtis v. Airborne Freight Corp.*, 87 F. Supp.2d 234, 244 (S.D.N.Y. 2000) (same) (collecting cases). It does not apply to "discrete unlawful acts, even where those discrete acts are part of a serial violation." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).  Instead, it applies only to "claims that by their nature accrue . . . after the plaintiff has been subjected to some threshold amount of mistreatment," *id.*, such as hostile work environment claims. *See Morgan*, 536 U.S. at 115.  "[T]ermination, failure to promote, denial of transfer, . . . refusal to hire," and the filing of disciplinary charges are all discrete acts.  *Id.* at 114; *Washington v. Cnty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004).

The continuing violation doctrine thus does not apply to Draghi's discrimination, retaliation, or accommodation claims.  Those claims are predicated on a three-year-long sequence of discrete events, including discipline, suspension, and termination.  *See, e.g.*, Compl. ¶ 23 (June 2019 disciplinary

7

notice for excessive absenteeism); *id.* ¶ 40 (February 2022 suspension for failure to adequately complete paperwork); *id.* ¶ 57 (September 2023 termination for engaging in inappropriate conduct with students). Those discrete acts cannot constitute a continuing discrimination violation. *See, e.g., Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023, 2020 WL 2836760, at *5-6 (S.D.N.Y. May 21, 2020) (no continuing violation where plaintiff, despite alleging a "campaign of discrimination," nevertheless relied on claims of baseless discipline that "squarely constitute[d] discrete acts"); *Smith v. Nat'l Grid USA*, No. 2:21-CV-6899, 2025 WL 1248676, at *19 (E.D.N.Y. Apr. 30, 2025) (no continuing violation because series of allegedly retaliatory actions constituted "discrete acts").

The upshot is that Draghi cannot directly challenge most of the conduct alleged in the complaint. Most importantly, he cannot challenge the June 13 incident, or the disciplinary conduct stemming from that incident. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) ("[T]he mere fact that an employee was dismissed within the statutory period cannot be used to pull in a time-barred discriminatory act[.]"). There are, however, two important qualifications here.

*First*, Draghi also brings a hostile work environment claim. And the Supreme Court has held that a hostile work environment claim is timely "so long as an act contributing to

8

that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105. If that criterion is satisfied, "the entire time period of the hostile environment may be considered by a court . . . ." *Id.* at 117. Because Draghi challenges some conduct (such as his suspensions) that falls within the limitations period,[4] the Court may consider some older misconduct when evaluating Draghi's hostile work environment claim.

*Second*, the Court may consider otherwise stale conduct as "background evidence to support" Draghi's claims of discrimination, failure to accommodate, and retaliation, even if that misconduct cannot be an independent basis for liability. *Id.* at 112.

**B.   Employment Discrimination**

To plead employment discrimination under the ADA, a plaintiff must show that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d

---

[4] An allegedly discriminatory suspension can contribute to a hostile work environment. *E.g.*, *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 328 (N.D.N.Y. 2013) ("[T]he discriminatory warnings and suspensions discussed [herein] contributed to the severity or pervasiveness of the hostile work environment.").

9

Cir. 2019). Only the second and fourth elements are disputed on this motion.

1. Draghi Has Alleged a Cognizable Disability

As relevant here, a plaintiff is plausibly disabled within the meaning of the ADA if he alleges that he: (1) has "a physical or mental impairment that substantially limits one or more of [his] major life activities," or (2) is "regarded as having such an impairment." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (citing 42 U.S.C. § 12102(2)). While Draghi fails to allege a disability under the first prong, he alleges a disability under the second: that his employer "regarded" him as having a disability.

The complaint's primary allegation about the nature and severity of Draghi's anxiety is that it "impact[ed] his ability to sleep and concentrate." Compl. ¶ 7.[5] This is not enough. To be sure, sleeping and concentrating are major life activities. *See* 29 C.F.R. § 1630.2(i)(1)(i). But the complaint says nothing about the degree to which Draghi's anxiety impaired those activities. It simply "recite[s] activities found in the [ADA] that [Draghi] could not adequately perform . . . ."

---

[5] Draghi also alleges that his anxiety caused "extreme tightness in his chest" during the June episode. Compl. ¶ 12. But he has not "hinted at how this [symptom] affected him other than on that day," and never explains how such tightness substantially affected other major life activities. *DeFranco v. N.Y. Power Auth.*, 731 F. Supp. 3d 479, 493 (W.D.N.Y. 2024). Accordingly, this "single episode — without more — does not constitute a disability under the ADA." *Id.* at 492.

10

*Dancause v. Mt. Morris Cent. Sch. Dist.*, 590 F. App'x 27, 28 (2d Cir. 2014). This type of superficial description does not suffice to allege a substantial limitation on a major life activity. *See id.* at 28-29.

Draghi does, however, plausibly allege that his employer regarded him as having a disability. *See* 42 U.S.C. § 12102(1) (defining "disability" to extend to individuals who are "regarded" by their employer "as having" a qualifying physical or mental impairment). To plead that he is "regarded as" having a disability, a plaintiff must allege that his employer perceived him as having *some* disability, even if the employer did not perceive that disability as substantially limiting. *Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 262 (E.D.N.Y. 2015); *see also Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012). This definition of disability "does not apply to impairments that are both 'transitory and minor', which [the ADA] defines as impairments with 'an actual or expected duration of [six] months or less.'" *Horsham*, 136 F. Supp. 3d at 262-63 (quoting 42 U.S.C. § 12102(3)(B)); *see also* 29 C.F.R. § 1630.15(f).

Here, Draghi has plausibly alleged that Parella viewed him as suffering from anxiety. Indeed, Parella described the June 13 incident as an "anxiety breakdown." Compl. ¶ 33. Moreover, the complaint permits the reasonable inference that

11

Parella viewed Draghi's anxiety as an ongoing condition. Parella implied that Draghi's "excessive absenteeism" was "connected" to his anxiety by bringing the June 13 incident up at a disciplinary conference and stating that June 13 was the day "the wheels came off the wagon." *Id.* ¶ 26. And in September 2019, more than three months after the June incident, he observed that Draghi was suffering from an "anxiety breakdown." *Id.* Thus, drawing all reasonable inferences in Draghi's favor, the complaint plausibly alleges that his employer perceived him as suffering from an ongoing, non-transitory impairment (*i.e.*, anxiety). The complaint therefore sufficiently alleges a disability under the ADA.

2. <u>Draghi Has Not Plausibly Alleged Causation</u>

While Draghi has alleged a cognizable disability, he has not alleged a causal link between that disability and an adverse employment action. So, his discrimination claim still fails.

"An adverse employment action is a materially adverse change in the terms and conditions of employment." *Atkins v. Rochester City Sch. Dist.*, 764 F. App'x 117, 119 (2d Cir. 2019). Generally speaking, disciplinary actions that have "no negative impact on compensation, benefits, or title" are not adverse employment actions. *Id.* Here, Draghi has plausibly alleged several adverse employment actions. He was fired in the fall of

12

2023, Compl. ¶ 57, and dismissal is a "[q]uintessential" adverse employment action.[6] *Sealy v. State Univ. of N.Y. At Stony Brook*, 408 F. Supp. 3d 218, 226 (E.D.N.Y. 2019). He has also alleged that the Department suspended him without pay in May 2022 and August 2022. Compl. ¶ 56. Those actions count as well. *Collazo v. Cnty. of Suffolk*, 163 F. Supp. 3d 27, 53 (E.D.N.Y. 2016). Draghi's remaining allegations involve disciplinary letters, conferences, and reprimands, which do not — on their own — amount to adverse employment actions. *See, e.g.*, *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 254-55 (E.D.N.Y. 2012) ("Criticism of an employee in the course of evaluating and correcting her work is not an adverse employment action.").

Once a plaintiff has alleged an adverse employment action, they must plead "plausible support [for] a minimal inference of discriminatory motivation." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015). The facts alleged must support an inference of but-for causation. *Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019). Such an inference may arise from "the employer's criticism of

---

[6] Draghi's termination post-dated his second SDHR complaint. This suggests that Draghi may not have exhausted his claim based on that termination. *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56-57 (2d Cir. 2018). But the defendants do not raise this issue, and exhaustion is waivable. *See Fort Bend Cnty. v. Davis*, 587 U.S. 541, 543-44, 553 (2019).

13

the plaintiff's performance in . . . degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

Draghi has not pled a plausible inference of discriminatory intent with respect to his suspensions or termination. He does not allege that his employer spoke about his anxiety in degrading terms, nor does he allege generally invidious comments about people suffering from anxiety or any other disability. The statement that comes closest is Parella's use of the word "breakdown" in September 2019. Compl. ¶ 33. But this comment came years before Draghi was suspended and eventually terminated and therefore cannot support a plausible inference of causation. *See Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."). Just as importantly, the word "breakdown" — while perhaps anachronistic — does not reflect negative "assumptions or attitudes" regarding the abilities of persons with anxiety as a class. *Id.* at 116.

14

Parella's comments about Draghi's June 13, 2019 episode are also too remote in time from his suspensions and firing to support an inference of discriminatory intent. While Parella is alleged to have said that Draghi's anxiety attack and resulting request for an accommodation were the "only reason" for the discipline he faced in June 2019, Compl. ¶ 26, any challenge to that discipline is time-barred. The first actionable employment action that Draghi faced — his May 2022 suspension — occurred around three years later. Compl. ¶ 52. The lengthy gap between Parella's comments in June 2019 and Draghi's eventual suspension undercuts any causal connection between the two incidents. *Tomassi*, 478 F.3d at 115; *see also Graham v. Macy's, Inc.*, No. 14-CV-3192, 2016 WL 354897, at *7 (S.D.N.Y. Jan. 28, 2016), *aff'd*, 675 F. App'x 81 (2d Cir. 2017) ("Merely because an employee or employees at some point mocked or dismissed [plaintiff's] disabilities does not mean that any later adverse actions taken against her by Macy's were *because of* her disability.").

Draghi does assert that similarly situated employees without disabilities were not subject to the same discipline he received. *See, e.g.*, Compl. ¶¶ 39-40, 42, 44. But he offers no supporting facts to buttress this allegation. It is, therefore, the type of conclusory allegation that the Court need not credit at the motion-to-dismiss stage. *Iqbal*, 556 U.S. at 678

15

(plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

## C. Failure To Accommodate

To plead a failure-to-accommodate claim, a plaintiff must allege (1) that he had a disability; (2) that the employer knew it; (3) that he could perform the essential functions of the job with a reasonable accommodation; and (4) that the employer refused to provide such an accommodation. *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999). The Court need not apply this standard, however, because Draghi's claim is time-barred.

The complaint reveals only one request for an accommodation: Draghi's request to switch assignments in June 2019. Compl. ¶¶ 16-20. But as discussed above, the June incident (and the events immediately following it) are not actionable, because they fall outside the 300-day window covered by Draghi's first SDHR complaint. Accordingly, the failure-to-accommodate claim is dismissed.

## D. Hostile Work Environment

To allege a hostile work environment, "a plaintiff must show that (i) the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and

16

(ii) the harassment was based on [his] protected group." *Williams v. Geiger*, 447 F. Supp. 3d 68, 80-81 (S.D.N.Y. 2020) (Cave, M.J).

Draghi has not alleged severe or pervasive harassment. He mainly alleges that, over four years, Parella and other supervisors criticized him, wrongly disciplined him, or paired him with teachers who made him anxious.[7] But "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, do not rise to a level constituting a hostile work environment." *Montanez v. McDean LLC*, 770 F. App'x 592, 594 (2d Cir. 2019). And courts in this circuit have held that a complaint that relies primarily on allegations of meritless discipline (like Draghi's) does not adequately allege a hostile work environment. *See, e.g.*, *Littlejohn*, 795 F.3d at 321 (allegations of "harsh tones" and "wrongful[] reprimand[s]" insufficient for hostile work environment claim); *Trachtenberg v. Dep't of Educ. of City of N.Y.*, 937 F. Supp. 2d 460, 472-73 (S.D.N.Y. 2013) ("negative performance evaluations and

---

[7] Draghi does not claim that his colleague's remark that he was "stupid" was discriminatory against persons with anxiety. That argument would fail in any event, because (a) stupidity is not, of course, a disability, even if it may be invoked to demean the listener; and (b) Draghi does not allege any other discriminatory epithets in his complaint. "Isolated comments . . . without more, are insufficient to support a hostile work environment claim." *Maines v. Last Chance Funding, Inc.*, No. 17-CV-5453, 2018 WL 4558408, at *11 (E.D.N.Y. Sep. 21, 2018), *amended*, 2018 WL 4610898 (E.D.N.Y. Sep. 25, 2018); *see also Kemp v. A & J Produce Corp.*, 164 F. App'x 12, 14 (2d Cir. 2005) (noting that "more than a few isolated incidents" of discriminatory language are necessary to allege hostile work environment).

17

letters . . . that contained scurrilous charges" did not constitute severe or pervasive harassment).

### E.  Retaliation

To state an ADA retaliation claim, a plaintiff must allege that (1) he engaged in protected ADA activity (*e.g.*, requesting reasonable accommodation or filing a discrimination complaint); (2) the employer was aware of this; 3) the employer took adverse action against him; and (4) a causal connection existed between the protected activity and the adverse action. *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015).  The parties dispute only the fourth element.

"To prove a causal connection, a plaintiff must show that but for the protected activity, the adverse action would not have been taken."  *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024).  A plaintiff can allege causation by pointing to "direct evidence of retaliatory animus," or by "showing that the protected activity was followed closely by discriminatory treatment."  *Id.*

Draghi has not alleged a plausible causal connection here.  To be sure, Draghi engaged in protected activities: filing complaints with the SDHR and requesting an accommodation (though the latter is time-barred).  *See Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 57 (S.D.N.Y. 2019) (filing SDHR

18

complaint is protected activity); *Laface v. Eastern Suffolk Boces*, 349 F. Supp. 3d 126, 149 (E.D.N.Y. 2018) (requesting a reasonable accommodation is protected activity). However, Draghi's suspensions and firing occurred more than two years after he filed his first SDHR complaint, and more than three years after he requested the accommodation. The closest-in-time activity was the filing of his second SDHR complaint, which occurred eight months before his termination. ECF No. 12-5; *see also* Compl. ¶ 57. But all these temporal gaps are too long to permit a plausible inference of causation. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (temporal proximity must be "very close"); *Flood v. UBS Asset Mgmt., Inc.*, No. 10-CV-374, 2012 WL 288041, at *17 (S.D.N.Y. Feb. 1, 2012) ("[C]ourts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation."). And Draghi has alleged no facts suggesting the suspensions or firings — rather than the minor discipline he faced three years earlier — were motivated by "direct evidence of retaliatory animus." *Sharikov*, 103 F.4th at 170. So, the retaliation claim must be dismissed.[8]

---

[8] Draghi also claims that the Department engaged in a retaliatory "campaign of false and baseless discipline" against him during the winter and spring of 2022. Compl. ¶ 37. Almost all of that conduct is time-barred and, regardless, it runs into the same causation problem — it occurred more than 18 months after Draghi filed his first SDHR complaint.

19

## IV. Conclusion

For the foregoing reasons, the Defendant's motion to dismiss the federal ADA claims is granted in full. Because Draghi has not sought leave to amend, his federal claims are dismissed with prejudice. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [for leave to amend] that was not made."); *Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994) ("[W]e do not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought."). Given that dismissal, the Court declines supplemental jurisdiction over the state claims, which are dismissed without prejudice to Draghi refiling those claims in an appropriate state court. 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

    /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:  January 9, 2025
        Brooklyn, New York